# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-1772
_____

Michael Avenoso

*Plaintiff - Appellee*

v.

Reliance Standard Life Insurance Company

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 20, 2021
Filed: November 30, 2021
_____

Before GRUENDER, ERICKSON, and STRAS, Circuit Judges.
_____

GRUENDER, Circuit Judge.

The Reliance Standard Life Insurance Company denied Michael Avenoso's claim for long-term disability benefits after concluding that he retained sedentary-work capacity. Avenoso sued, arguing that the denial violated the Employee Retirement Income Security Act of 1974 ("ERISA") § 502(a)(1)(B), 29 U.S.C.

§ 1132(a)(1)(B). The district court[1] granted Avenoso's motion for summary judgment, and Reliance appeals. We conclude that although the district court erred by resolving factual disputes on summary judgment, the error was harmless. Accordingly, we affirm.

## I.

Until July of 2016, Avenoso worked as a maintenance supervisor. Through his employer, he had long-term disability insurance under a policy issued by Reliance and governed by ERISA. The policy provided two years of benefits if the claimant showed that he was unable to perform the material duties of his current occupation. The policy provided continued benefits after two years if the claimant showed that he was unable to perform the material duties of any occupation.

In July of 2016, Avenoso left his job as a maintenance supervisor due to lower-back pain. Two months later, he underwent back surgery. In early 2017, Avenoso claimed and Reliance approved two years of benefits because Avenoso was disabled from his occupation as a maintenance supervisor. At the end of the two years, however, Reliance informed Avenoso that it would discontinue benefits payments because Avenoso had not shown that he was unable to perform the material duties of any occupation. According to Reliance, Avenoso retained "sedentary work function," defined as "the ability to exert up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects" during a work day that "involves sitting most of the time, but may involve walking or standing for brief periods of time." *See* 20 C.F.R. § 404.1567(a).

Avenoso appealed within Reliance's claims department. He explained that he had been unable to submit proof of his condition in the form of an electromyogram

---

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

("EMG") or an MRI because an EMG would be too painful; he could not sit, stand, or lie still for the time required to perform an MRI; and in any case, he could not drive to a testing site more than fifteen minutes away "without the pain becoming intolerable." Ultimately, Avenoso did submit to an MRI, and the results appeared relatively mild. But Avenoso also sent Reliance a note from his physician, Dr. Cyrus Vosough, recommending that Avenoso "avoid lifting, bending and prolonged sitting" due to his lower-back condition. In addition, Avenoso sent Reliance letters describing his pain and photographs showing handrails in his living space to assist with mobility. He noted as well that he was receiving disability-insurance payments from the Social Security Administration. Social-security disability benefits are reserved for those whom the Social Security Administration deems unable "to engage in any substantial gainful activity." 42 U.S.C. § 423(a)(1)(E), (d)(1)(A).

Avenoso also drove thirty-five minutes each way to receive a "functional-capacity evaluation" ("FCE"). The physical therapist who performed the FCE noted that "Avenoso demonstrated . . . movement and muscle recruitment patterns that were inconsistent when aware and unaware of observation." Accordingly, the physical therapist noted that "[t]he capabilities outlined [in her report] would be considered to be Michael Avenoso's minimal functional ability level." Nonetheless, the physical therapist concluded:

> The results of this evaluation indicate that Michael Avenoso did not demonstrate an ability to tolerate an 8 hour work day . . . . His ability level would be 2-3 hours at this time. . . . He did not demonstrate an ability to safely perform any lifting, carrying or pulling functional tasks due to impaired standing balance.

As part of its evaluation of Avenoso's appeal, Reliance contracted with Medical Consultants Network to arrange an independent medical evaluation. Medical Consultants Network hired Dr. Jeffrey S. Liva to perform the evaluation. Dr. Liva concluded that Avenoso retained sedentary-work capacity and was "able to work 8 hours a day, 40 hours a week." Furthermore, during the examination, Dr. Liva observed that Avenoso exhibited "uncontrolled shaking" which "completely

stopped" after about fifteen minutes. Noting that "there is no physiological . . . explanation for this," Dr. Liva concluded that Avenoso was engaging in "symptom magnification."

Reliance also arranged for a vocational-rehabilitation specialist to perform a residual-employability analysis based on Avenoso's medical records, educational background, work history, and other information. The specialist identified five "viable sedentary occupational alternatives" consistent with "Avenoso's physical capacities."

On August 8, 2019, Reliance upheld its denial of long-term disability benefits. Avenoso sued, claiming that the denial violated ERISA. Both parties moved for summary judgment. The district court granted Avenoso's motion and denied Reliance's motion. Reliance appeals.

**II.**

"We review de novo a district court's grant of summary judgment." *Riedl v. Gen. Am. Life Ins.*, 248 F.3d 753, 756 (8th Cir. 2001). Summary judgment is proper only if "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id.* This means that a district court should "not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Great Plains Real Est. Dev., L.L.C. v. Union Cent. Life Ins.*, 536 F.3d 939, 943-44 (8th Cir. 2008). Although the district court must determine whether there is a "genuine issue as to any material fact," *Riedl*, 248 F.3d at 756, this is a legal determination, *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 299 n.5 (5th Cir. 2019).

Here, the district court recited the familiar rules governing summary-judgment proceedings. *See Avenoso v. Reliance Standard Life Ins.*, No. 19-cv-2488, 2021 WL 1140205, at *1 (D. Minn. Mar. 25, 2021) (acknowledging that summary judgment is reserved for cases where the movant is entitled to "judgment as a matter

of law" because there is "no genuine dispute as to any material fact"). But it did not follow them. Instead, it weighed the evidence, *id.* at *2-6, made a determination as to the credibility of Avenoso's accounts of his condition, *id.* at *5, and made findings on disputed factual questions, *id.* at *2-6. In short, the district court adjudicated the parties' summary-judgment motions as if it were ruling in a bench trial.

Avenoso defends this procedure by arguing that, in ERISA-benefits cases, summary judgment is merely a vehicle for submitting the case to the district court for decision on the administrative record. That is the law in the First Circuit, which has created an exception from ordinary summary-judgment procedures for challenges to the denial of ERISA benefits. *See, e.g.*, *Doe v. Harvard Pilgrim Health Care, Inc.*, 974 F.3d 69, 72 (1st Cir. 2020) (holding that "a summary judgment motion in a lawsuit contesting the denial of benefits under ERISA is simply a vehicle for teeing up the case for decision on the administrative record" and thus "the district court . . . may weigh the facts" and "resolve conflicts in evidence"). But that is not the law in this circuit. *See Riedl*, 248 F.3d at 754, 756 (holding in an ERISA-benefits case that "summary judgment is inappropriate when the record permits reasonable minds to draw conflicting inferences about a material fact"); *accord O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 642 F.3d 110, 116 (2d Cir. 2011); *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 484 n.3 (7th Cir. 2007); *Shaw v. Conn. Gen. Life Ins.*, 353 F.3d 1276, 1282, 1286 (11th Cir. 2003); *Kearney v. Standard Ins.*, 175 F.3d 1084, 1096 (9th Cir. 1999) (en banc); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998).

To be sure, in cases where the ERISA plan confers discretionary authority on the administrator, we have likened bench trials on the administrative record to summary judgment. *E.g.*, *Riddell v. Unum Life Ins. Co. of Am.*, 457 F.3d 861, 864 (8th Cir. 2006). But this is because the court of appeals treats a bench trial in such a case like summary judgment by reviewing the district court's judgment *de novo*, *see id.*, not because the district court may treat summary judgment in such a case like a bench trial by resolving factual disputes, *see Werdehausen v. Benicorp Ins.*, 487 F.3d 660, 664-65 (8th Cir. 2007) (reiterating in a case where the administrator

-5-

had discretionary authority that "a genuine issue of disputed fact" precludes summary judgment).

Furthermore, our treatment of bench trials like summary judgment is limited to cases where the administrator had discretionary authority. Normally, if the administrator had discretionary authority, then the district court must uphold its decision if it is one that "a reasonable person could have reached" on the administrative record. *Cash v. Wal-Mart Grp. Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997) (emphasis omitted). Thus, a bench trial where the administrator had discretionary authority normally involves the same kind of purely legal inquiry that summary judgment does—an inquiry that asks whether, on the applicable record, a reasonable factfinder could reach a certain outcome. *Compare id. with Great Plains Real Est.*, 536 F.3d at 943-44 (explaining that the question on summary judgment is whether "the evidence is sufficient to allow a reasonable jury verdict for the nonmoving party"). It makes sense, then, for the court of appeals to treat a bench-trial judgment where the administrator had discretionary authority like a grant of summary judgment by reviewing it *de novo*. *See Riddell*, 457 F.3d at 864; *cf. Bacchus Indus. v. Arvin Indus.*, 939 F.2d 887, 891 (10th Cir. 1991) (explaining that appellate review of summary judgment is *de novo* "[b]ecause summary judgment involves purely legal determinations").

Not so in a case like this, where the parties agree that the administrator lacked discretionary authority. The district court reviews the decision of an administrator who lacked discretionary authority *de novo*, acting as factfinder on the administrative record. *See Johnson v. United of Omaha Life Ins.*, 775 F.3d 983, 986-87 (8th Cir. 2014). As a result, a bench trial where the administrator lacked discretionary authority is not, like summary judgment, a purely legal exercise. Accordingly, we do not treat it as such but instead "review the district court's findings of fact under our customary clearly erroneous standard." *Id.* at 987 (brackets omitted).

For multiple reasons, then, the considerations that warrant our treating a bench trial where the administrator had discretionary authority like summary judgment do not justify what the district court did here, which was to treat summary judgment where the administrator lacked discretionary authority like a bench trial.

Finally, we address Avenoso's objection that insisting on ordinary summary-judgment procedures in this context is a mere formality that "would result in constant judicial inefficiency" and make "district court proceedings nothing more than a practice round." It is true that "there is no right to trial by jury" in a suit "to recover present or future benefits under ERISA," *Howe v. Varity Corp.*, 36 F.3d 746, 750 n.2 (8th Cir. 1994), and normally the district court must limit its review to the administrative record, *see Brown v. Seitz Foods, Inc., Disability Benefit Plan*, 140 F.3d 1198, 1200 (8th Cir. 1998). In most cases, then, both the identity of the factfinder and the evidence in the record will remain constant whether the procedural posture is summary judgment or a bench trial. If all cases were like that, then there would be little point to ordinary summary-judgment procedures.

But not all cases are like that because the rule that the district court must limit its review to the administrative record admits of exceptions. For example, the district court may admit evidence outside the administrative record for the purpose of determining whether to conduct deferential or *de novo* review of the administrator's decision. *Ingram v. Terminal R.R. Ass'n of St. Louis Pension Plan for Nonschedule Emps.*, 812 F.3d 628, 634 (8th Cir. 2016). And if the appropriate standard of review is *de novo*, then the district court may admit additional evidence for the purpose of deciding the merits "if there is good cause to do so." *King v. Hartford Life & Accident Ins.*, 414 F.3d 994, 998 (8th Cir. 2005) (en banc). There could even be a dispute about what was included in the administrative record that the district court would need to resolve based on evidence not in the administrative record. *See, e.g.*, *Koons v. Aventis Pharms., Inc.*, 367 F.3d 768, 772, 779-80 (8th Cir. 2004) (affirming the district court's decision to permit a witness to "testif[y] to what would have been contained in [a] document" that was before the ERISA plan administrator but was "lost . . . before [the] litigation began").

-7-

In any of these scenarios, a bench trial could involve the presentation of new evidence, including witness testimony. Summary judgment would then serve the important function of sparing the court, the parties, and the witnesses the time and expense of a bench trial in the event that the case can be resolved without one. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (explaining the purpose of summary judgment).

Thus, our insistence on ordinary summary-judgment procedures even in ERISA-benefits cases—including ERISA-benefits cases where the administrator lacked discretionary authority, *see Riedl*, 248 F.3d at 755-56—is no mere formality. Parties that wish the district court to exercise its factfinding function under Federal Rules of Civil Procedure 39(b) and 52(a)(1) to decide the case on the administrative record should ask the district court to do exactly that. *See Sloan v. Hartford Life & Accident Ins.*, 475 F.3d 999, 1001, 1003 (8th Cir. 2007) (affirming judgment "on the briefs and a stipulated fact record" in an ERISA-benefits case); *Patton*, 480 F.3d at 484 n.3 ("Those who wish to ensure that a judgment [in an ERISA-benefits case] is treated with the deference due the result of a bench trial are advised to eschew Rule 56 and stick to Rule 52(a)."). If instead a party moves for summary judgment under Federal Rule of Civil Procedure 56, then the district court must follow the procedures outlined in that rule and grant summary judgment only if "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Riedl*, 248 F.3d at 756. Insofar as it failed to follow those procedures here, the district court erred.

### III.

Our analysis cannot end there, however. Under Federal Rule of Civil Procedure 61, harmless errors are not grounds for reversal. In this case, each party confirmed at oral argument that it has no additional evidence to submit in the event that we remand for a bench trial. Thus, if we were to remand, then the district court would do in a bench trial exactly what it did already: decide the case on the

administrative record without giving either side the benefit of all reasonable inferences but instead weighing the evidence and finding the facts. On appeal we would "review the [district] court's factfinding for clear error and its legal conclusions de novo." *Koons*, 367 F.3d at 774. Therefore, if we would affirm the district court's decision under this standard of review, then the district court's error in issuing that decision on summary judgment rather than waiting for the parties to request a bench trial on the administrative record would be harmless. *See Patton*, 480 F.3d at 484 ("[I]f we think that a district court granted summary judgment despite the existence of genuine issues of material fact, but know that no new evidence will be presented at trial on remand, we can in most . . . situations know with certainty that remand would be an unwarranted empty formality." (internal quotation marks omitted)); *cf. Quinn v. St. Louis Cnty.*, 653 F.3d 745, 750 (8th Cir. 2011) (affirming the dismissal of a claim because it was clear that the claim "would not have survived summary judgment" and thus "any error that occurred at the motion to dismiss stage was harmless").

Here, the policy entitles Avenoso to long-term disability benefits if he is unable to perform the material duties of any occupation. And Reliance does not dispute that Avenoso would meet this standard if he were incapable of even sedentary work. *Cf.* 20 C.F.R. § 404.1567 (ranking sedentary work least demanding in its classification of job types). Therefore, whether the district court's decision survives *de novo* review of its legal determinations and clear-error review of its factual findings turns on whether the district court clearly erred in finding that Avenoso lacks sedentary-work capacity.

In arguing that the district court did clearly err, Reliance emphasizes the evidence tending to show that Avenoso retains sedentary-work capacity. For example, Dr. Liva concluded that Avenoso had sedentary-work capacity and was "able to work 8 hours a day, 40 hours a week." The vocational-rehabilitation specialist identified five "viable sedentary occupational alternatives" consistent with "Avenoso's physical capacities." The results of the MRI were relatively mild. And there is some evidence suggesting that Avenoso may have attempted to evade or

-9-

skew the results of testing. He protested efforts to conduct an EMG or MRI, including by claiming that he was unable to drive for fifteen minutes even though the record indicates that he drove thirty-five minutes each way to and from the FCE. Dr. Liva noted "symptom magnification" during his examination of Avenoso. And the FCE report indicated that Avenoso exhibited "movement and muscle recruitment patterns that were inconsistent when aware and unaware of observation."

Although we do not discount this evidence, it must be balanced against the evidence tending to show that Avenoso lacks sedentary-work capacity. Notwithstanding her concern about Avenoso's "inconsistent [performance] when aware and unaware of observation," the physical therapist who performed the FCE concluded that "Avenoso did not demonstrate an ability to tolerate an 8 hour work day" and stated that "[h]is ability level would be 2-3 hours at this time." She added that Avenoso "did not demonstrate an ability to safely perform any lifting, carrying or pulling functional tasks" and later reiterated that, even seated, he "could not safely perform pulling." Dr. Vosough "recommended that [Avenoso] avoid lifting, bending and prolonged sitting." Furthermore, Avenoso successfully applied for social-security disability benefits. "Although the Social Security Administration's determination is not binding, it is admissible evidence to support an ERISA claim for long-term disability benefits." *Riedl*, 248 F.3d at 759 n.4. Finally, Avenoso's own accounts of his debilitating pain, which the district court found credible, suggest that he lacks even sedentary-work capacity. *See Sloan v. Hartford Life & Accident Ins.*, 433 F. Supp. 2d 1037, 1039 (D.N.D. 2006) (explaining that "subjective pain complaints," if deemed credible, "are highly probative of the ultimate question of disability"), *aff'd*, 475 F.3d 999.

On this record, we cannot say that the district court's finding that Avenoso lacks sedentary-work capacity was clearly erroneous. As we noted in *Sloan*, "the court of appeals may not reverse [on clear-error review] even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." 475 F.3d at 1005. Like the district court

in this case, the district court in *Sloan* found that the plaintiff was totally disabled based on a "finding of disability under the rigorous social security standard," "subjective complaints of disabling pain," and some favorable "medical evidence." *Id.* at 1005-06. We affirmed, noting that "[a]lthough [the defendant] can point to evidence in the record which tends to show [that the plaintiff] was not disabled, that is not enough for us to conclude the district court clearly erred." *Id.* at 1006. Because we reach the same conclusion here, we must disregard as harmless the district court's error in adjudicating the parties' motions for summary judgment as if it were ruling in a bench trial.

## IV.

For the foregoing reasons, we affirm the judgment in favor of Avenoso.

_____