# United States Court of Appeals
## For the Eighth Circuit
_____

No. 24-1329
_____

Peter Allan, Sr.; Russell Hatton; Michael D. Benson; Steven Hawkins; Russell
Lynn Norton; Danny Stone; Patrick Otten; Ryan White; David Hamilton; Kenneth
Daywitt; Dennis White; Maikijah HaKeem; Daniel A. Wilson; Joseph Thomas

*Plaintiffs - Appellants*

v.

Minnesota Department of Human Services; Jodi Harpstead, in her official capacity
as Commissioner of Department of Human Services; Marshall Smith, in his
official capacity as Chief Executive Director of Direct Care and Treatment for the
Minnesota Sex Offender Program; Nancy Johnston, in her official capacity as the
Minnesota Sex Offender Program Executive Director; Terry Kneisel, in his official
capacity as the Moose Lake Facility Director for the Minnesota Sex Offender
Program

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 23, 2024
Filed: January 31, 2025
_____

Before COLLOTON, Chief Judge, GRUENDER and KOBES, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Plaintiffs—fourteen civilly committed clients of the Minnesota Sex Offender Program (MSOP)—appeal the summary judgment dismissal of their federal religious liberty claims. We affirm.

## I. Background

This lawsuit concerns MSOP policies that govern spiritual groups, specifically those policies that were affected by the COVID-19 pandemic. Prior to the pandemic, MSOP clients were permitted to participate in spiritual groups, subject to various policies and procedures. Each group was led by a spiritual resource volunteer who was recruited by MSOP's volunteer services coordinator. To form a new spiritual group, MSOP required six clients to express interest, though groups of fewer than six could be considered on a discretionary basis. Each group was permitted to gather regularly for spiritual activities, including religious ceremonies. If a group lost its spiritual resource volunteer, MSOP would permit the group to continue to meet with staff supervision for up to ninety days before suspending the group. MSOP clients generally were allowed to participate in spiritual ceremonies, unless a client was on restricted status, had previously violated a safety or security policy, or had abused spiritual group time. MSOP also could limit religious observance "[w]hen necessary for the safety, security, or orderly operation of the facility." MSOP's pre-pandemic policies did not contemplate virtual spiritual practices that used video visits or livestreaming.

On March 13, 2020, due to the COVID-19 pandemic, MSOP began to implement new regulations. In relevant part, these regulations prohibited the interaction of clients from different units and suspended all in-person meetings between clients and outside visitors. Because of these new regulations, MSOP clients were unable to meet with their spiritual groups. On June 5, 2020, Governor Walz issued an executive order that allowed in-person religious ceremonies to resume in Minnesota, subject to certain restrictions. But within MSOP facilities, nothing changed for several months. Over time, the pandemic restrictions loosened, and spiritual groups began to meet again, subject to varying restrictions, such as

mask and vaccination requirements.  On May 11, 2023, the U.S. Department of Health and Human Services ended the public health emergency.  At that point, all remaining pandemic-era restrictions were lifted and MSOP's spiritual groups were governed by the same policies as those in place before the pandemic.

On September 16, 2020, Plaintiffs filed a complaint against the Minnesota Department of Human Services, its Commissioner, and three MSOP directors, alleging that MSOP's limitations on spiritual group practices and gatherings violated the U.S. Constitution and the Religious Land Use and Institutionalized Persons Act (RLUIPA).  On April 21, 2021, Plaintiffs amended their complaint to add a third claim that MSOP's limitations on tobacco, which predate and were unrelated to the pandemic, violated the Constitution and RLUIPA.  On March 4, 2022, after negotiations, both parties stipulated to dismiss the tobacco claim.  On April 1, 2022, Plaintiffs filed a second amended complaint.  It did not raise new grounds for relief but added arguments and context to their original claims that the pandemic-era restrictions on spiritual group activity violated RLUIPA and the Constitution.

The Defendants moved for summary judgment, arguing that Plaintiffs' claims were moot because all COVID-19 restrictions had ceased and pre-pandemic policies were now in effect.  Plaintiffs did not dispute that their claims regarding COVID policies were moot.  Instead, they argued that MSOP's *current* policies—requiring spiritual groups to have a minimum of six members, not permitting video visits with spiritual resource volunteers, and not permitting livestreaming—nonetheless violated the Constitution and RLUIPA.  The district court[1] declined to address Plaintiffs' new concerns.  It found that these alleged injuries were not pled in the second amended complaint and thus were not before the court.  The injuries that were before the court—MSOP's pandemic-era policies—were moot.  Therefore, it granted Defendants' motion for summary judgment.

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

On appeal, Plaintiffs contest the district court's grant of summary judgment and move to supplement the record with two discovery documents that they neglected to introduce at the district court.

## II. Discussion

"We review de novo a district court's grant of summary judgment." *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021). "Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

The Constitution limits federal courts' jurisdiction to actual "Cases" or "Controversies." U.S. Const. art. III, § 2. If "the issues presented are no longer live or the parties lack a cognizable interest in the outcome, a case or controversy under Article III no longer exists because the litigation has become moot." *Brazil v. Ark. Dep't of Hum. Servs.*, 892 F.3d 957, 959 (8th Cir. 2018) (internal quotation marks omitted). For example, "a party loses a cognizable interest when changed circumstances already provide the requested relief and eliminate the need for court action." *Id.* (internal quotation marks omitted). If an action becomes moot, we must dismiss for lack of jurisdiction. *Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005) (en banc).

Further, under the Federal Rules of Civil Procedure, the issues presented must be properly pled before the court. *See* Fed. R. Civ. P. 8(a). "This court construes a complaint liberally." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 795 (8th Cir. 2021) (internal alterations and quotation omitted). However, "the essential function of notice pleading is to give the defendant fair notice of what the claim is and the grounds upon which it rests." *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 992 (8th Cir. 2018) (internal quotation marks, alterations, and emphasis omitted). "Thus, while we recognize that the pleading requirements under the Federal Rules are relatively permissive, they do not entitle

parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment." *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004). "The complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Warmington*, 998 F.3d at 795 (internal quotation marks omitted).

Here, Plaintiffs' central claims about the pandemic-era policies are moot because those policies are no longer in effect. Plaintiffs do not dispute that the pandemic-era policies are no longer in effect. Instead, Plaintiffs take issue with MSOP's current practices—requiring spiritual groups to have a minimum of six members, not permitting video visits with spiritual resource volunteers, and not permitting livestreaming. But MSOP's current policies were not challenged in the operative second amended complaint. From beginning to end, the complaint only takes issue with MSOP's pandemic-era policies. Both Counts I and II mention the "Department's ban on spiritual practices," which seems to refer to the "Department's March 13th directive" that issued the first of the pandemic-related restrictions. The second amended complaint does not mention the minimum size requirement or video visits. Plaintiffs are at their strongest when they assert that their complaint provided notice for their livestreaming argument. But even there, the complaint refers to "the Department's current policy," which, in April 2022, was subject to COVID restrictions. Even if individual passages of the complaint could be "parsed piece by piece" to support a claim under MSOP's current policies, when the complaint is "read as a whole," Plaintiffs' arguments fail. *See Warmington*, 998 F.3d at 795.

Next, we consider Plaintiffs' motion to supplement the record. Generally, "an appellate court may consider only the record made before the district court." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 988 F.2d 61, 63 (8th Cir. 1993). Under a "rarely exercised and . . . narrow exception" to this rule, we may enlarge the record, "[w]hen the interests of justice demand it." *Id.* We have declined to enlarge the record where parties had "ample time" to develop a record in the district court and where the omission resulted from "a lack of diligence." *See Von Kahl v. United States*, 242 F.3d 783, 788 (8th Cir. 2001); *Barham v. Reliance Standard Life Ins.*

*Co.*, 441 F.3d 581, 585 (8th Cir. 2006). Further, if granting the motion does not change the case's resolution, we may deny it as moot. *See Robinson v. Pulaski Tech. Coll.*, 698 F. App'x 859, 859 (8th Cir. 2017).

Plaintiffs move to supplement the record with two of their own discovery responses. Plaintiffs assert that Defendants used interrogatories and requests for admission to "request[] more information about the allegations in the [s]econd [a]mended [c]omplaint and [to seek] comparisons to pre-COVID-19 restrictions upon religious liberties of the [Plaintiffs]," as well as to inquire about "on-going violations of [Plaintiffs'] religious liberties." Plaintiffs argue that their discovery responses would reveal that the Defendants understood that the second amended complaint addressed MSOP's current policies. They argue that without this information, "the district court did not have a full understanding of the discovery exchange between the parties, relying solely on the allegations asserted in the second amended complaint."

We disagree and deny their motion for two reasons: First, Plaintiffs offer no real explanation for why they failed to include these documents below. They merely assert that the documents "have come to light." Because Plaintiffs seek to supplement with their own documents and Plaintiffs provide no reason these documents were not offered at the district court, it seems likely that their absence results from "a lack of diligence." *See Von Kahl*, 242 F.3d at 788. Second, admitting the records would not change the case's resolution. The district court granted summary judgment because Plaintiffs' claims in the second amended complaint were moot. Discovery documents cannot modify a complaint. *See* Fed. R. Civ. P. 15 (explaining how to amend a pleading). Thus, admitting these documents cannot change whether Plaintiffs' claims in the second amended complaint were mooted. Therefore, Plaintiffs' motion to supplement is denied.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____